# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**ALAN M. DOWNES and TERRY KUMBERA, on behalf of themselves and all others similarly situated,**

        **Plaintiffs,**

        v.                                                        Case No. 09-C-0637

**WISCONSIN ENERGY CORPORATION RETIREMENT ACCOUNT PLAN and WISCONSIN ENERGY CORPORATION,**

        **Defendants.**

---

## DECISION AND ORDER

Plaintiffs Alan M. Downes and Terry P. Kumbera ("Plaintiffs" or "Named Plaintiffs") individually, and on behalf of the Class they represent, and Defendants Wisconsin Energy Corporation Retirement Account Plan and Wisconsin Energy Corporation ("WE") (collectively, "Defendants") have determined to settle this lawsuit.

Pursuant to Fed. R. Civ. P. 23(b)(1)(A), 23(b)(1)(B), and 23(b)(2), a mandatory class action was conditionally certified, for settlement purposes, by the Court on November 29, 2011. The Class is defined to include:

> (1) All persons (referred to sometimes herein as "participant-Members") who (i) accrued a vested benefit under the Plan since January 1, 1996; (ii) were, as of August 1, 2011, no longer employed by Wisconsin Energy Corporation or an "Affiliated Company," as that term is defined in the Plan, or is a person who has been rehired by Wisconsin Energy Corporation or an "Affiliated Company" and who previously received a Plan distribution; and (iii) are listed on the final Participant List;

(2) All persons (referred to sometimes herein as "successor-Members") who (i) are the beneficiaries, estates, or alternate payees under a Qualified Domestic Relations Order ("QDRO") of such participant-Members; and (ii) are listed on the Participant Successor List.

Plaintiffs, on behalf of themselves and the Class, and Defendants have agreed to settle this class action suit (the "Lawsuit") on the terms and conditions set forth in the Class Settlement Agreement dated November 18, 2011 (the "Agreement"), a copy of which is filed with the Clerk of the Court.[1] Currently pending is an application for final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e), and final certification of the Class and this action as a class action under Fed. R. Civ. P. 23(b)(1)(A), 23(b)(1)(B), and 23(b)(2), and the final appointment of Plaintiffs' counsel as Class Counsel under Fed. R. Civ. P. 23(g). On November 29, 2011, the Court entered an Order Preliminarily Approving Settlement And Approving Notice To The Class, conditionally certifying the proposed Class and appointing Plaintiffs' counsel as Class Counsel, and directing that Notice be given to the Class Members of the proposed Settlement and of a Fairness Hearing. The Court approved the form and content of the Mailed Notices directed to Class Members and the Publication Notice which were attached as Exhibits to the Agreement. The Notices informed the Class Members of the Settlement terms and that the Court would consider the following issues at the Fairness Hearing: (i) whether the Court should grant final approval of the Settlement and finally certify the Class; (ii) whether the Court should enter final judgment dismissing the Lawsuit with prejudice; (iii) whether the Court should approve the amount of attorneys' fees, costs, and expenses to be awarded to Class Counsel and the amount of Named Plaintiffs' Case Contribution Payments; and (iv) any objections by Class Members to any of the above.

---

[1] Unless otherwise specifically defined herein, capitalized terms used in this Final Order and in the Judgment have the same meaning as defined in the Agreement.

In accordance with the Notice to Class Members, a Fairness Hearing was held on April 3, 2012. See Docs. 194-195. Now, the Court, having heard argument in support of the Settlement, certification of the Class, and appointment of Class Counsel, and having reviewed all of the evidence and other submissions presented with respect to the Settlement and the record of all proceedings in this case, enters the following findings:

1. The Court has jurisdiction over the subject matter and the Parties to this Lawsuit, including the Class Members,

2. The Court confirms for settlement purposes the certification of this action as a class action and the Class under Fed. R. Civ. P. 23(b)(1)(A), 23(b)(1)(B), and 23(b)(2), as consisting of:

> (1) All persons (referred to sometimes herein as "participant-Members") who (i) accrued a vested benefit under the Plan since January 1, 1996; (ii) were, as of August 1, 2011, no longer employed by Wisconsin Energy Corporation or an "Affiliated Company," as that term is defined in the Plan, or is a person who has been rehired by Wisconsin Energy Corporation or an "Affiliated Company" and who previously received a Plan distribution; and (iii) are listed on the final Participant List;
>
> (2) All persons (referred to sometimes herein as "successor-Members") who (i) are the beneficiaries, estates, or alternate payees under a Qualified Domestic Relations Order (QDRO") of such participant-Members; and (ii) are listed on the Participant Successor List.

3. The Court further confirms for settlement purposes the appointment of Plaintiffs' counsel as Class Counsel under Fed. R. Civ. P. 23(g).

4. The Agreement, together with all of its exhibits (as filed with the Court), is incorporated in this Final Order and in the Judgment.

5. On December 29, 2011, the Notice Administrator caused the Mailed Notices of Settlement to be mailed to all Class Members. See Nieman 2/18/12 Decl. (Doc. 145)

3. On February 18, 2012, the Notice Administrator filed with the Court proof of mailing of those Notices to all Class Members. Id.; Doc. 145-1.

6. The Notice Administrator caused the Publication Notice to be published in the Milwaukee Journal Sentinel on December 29, 2011. Id. 7. On February 18, 2012, the Notice Administrator filed with the Court proof of such publication. Id.; Doc. 145-3.

7. Notice to the Class Members has been given in an adequate and sufficient manner and the Notices given constitute the best notice practicable under the circumstances, and were reasonably calculated to apprise interested parties of the pendency of this Lawsuit, the nature of the claims, the definition of the Class, and their opportunity to present their objections to the Settlement. The notices complied in all respects with the requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.

8. In response to the 4,155 individually mailed notices (in addition to the Publication Notice), 31 Class Member(s) filed objection(s) prior to the Fairness Hearing. See Docs. 135-39, 151-53, 156-59, 162-71, 173-78 184-85, 189. Several class members - Winnie Croft (ID 542); Bessie Johnson (ID 37); Shirley McClendon (ID 3214); Freddie Black (ID 2220); Audrey Olive (ID 1428); Linda Jackson (ID 447); Debbie Young (ID 2779); and Bernadine Matthews (ID 10710) - filed more than one objection, and Ms. Croft, along with her counsel Christina Hernandez; Ms. Matthews, along with her counsel Paul Kinne; Ms. Johnson; Ms. McClendon; Ms. Jackson; and Ms. Young appeared at the Fairness Hearing. See Doc. 194 at 2. All objectors appearing at the hearing were provided an opportunity to be heard and the Court specifically heard from Ms. Croft and her counsel;

4

Ms. Matthews and her counsel; Ms. Jackson and Ms. Johnson. Id. A number of Class members appeared in support of the settlement. Id. at 6.[2]

9. Of the thirty-one Class members filing objections, two subsequently withdrew their objections; and one filed what was not an objection to any aspect of the settlement but rather a statement that he had not received a rollover-or-direct payment election form along with the notice of proposed settlement and estimated net settlement benefit (an oversight that the Notice Administrator corrected, see Nieman 2/18/12 Decl. (Doc. 145) 4)).[3]

10. No objections were received that challenge the settlement as a whole, i.e., no one contends that the $45 million total settlement amount is not a fair, reasonable or adequate settlement of the class's claims. See Doc. 194 at 4-6. The Court confirmed at the Fairness Hearing that no objector appearing objected to the settlement overall. Id.

11. The objectors' objections are principally focused on the Plaintiffs' designed recommended plan of allocation: they think they personally should receive a larger portion of the net settlement proceeds. The total settlement amount of $45 million is fixed, as is the $250 guaranteed minimum net settlement benefit for each Class member. See Doc.

---

[2]Five non-Class members filed requests for inclusion in the Class or "objections" to being excluded but for the reasons stated in Defendants' filing, see Defs. 3/27/11 Final Approval Mem. at 6-7, the Court finds that Timothy Branam, Paulette Watford, Sedina Murrell, Elaine Tartt, were properly not included in the Class because they either never entered the cash balance plan formula at issue or they have no claim against the WE Plan because they are entitled to benefits under a different plan. Non-Class member Gregory Stafford withdrew his March 6 objection (Doc. 170) to not being included in the class on March 26 (Doc. 175).

[3]Larry Johnson (ID 1161) withdrew his 1/30/12 objection (Doc. 139) on 3/1/12 (Doc. 160). Christy Zich (ID 221) withdrew her 3/5/12 objection (Doc. 164) on 3/13/12 (Doc. 172).

132, Ex. 1, 11/18/11 Agreement at 7, 12.  By contrast, the plan of allocation proposed via the settlement agreement is merely recommended.  The Court can approve the settlement but reject the proposed plan of allocation without disturbing the settlement as a whole.  Formally, Defendants take no position on the plan of allocation, id. at 9-10.

12. The Court finds that the proposed plan of allocation is a "reasoned and considered allocation given the specifics of each class member's relative position under the Plan" and "Class Counsel's experienced assessment of the relative strength of those claims."  Id. at 3-4.  Significantly, not a single objector who believes he or she should receive a larger settlement benefit takes issue with Plaintiffs' assessment of the risks the class's seven claims were to face if the case were litigated to conclusion rather than settled.  No objector, for example, argues that Plaintiffs gave too optimistic a forecast for the likelihood of success on the case's primary whipsaw claim.  No objector, conversely, argues that the plan of allocation takes too pessimistic a view of the chances of success on the three grandfathered claims, added for the first time when the complaint was amended and expanded to cover flaws Plaintiffs believed they had discovered in the manner in which the Plan calculated benefits under the Plan's traditional, final average pay formula.

13. Additionally, no objector:  (1) disputes that all class members had a statute of limitations risk; (2) disputes that distinctions need to be made between class members based on their relative exposure to that risk; or (3) urges that different percentages be applied because Plaintiffs misjudged (either over- or understated) the true risk.

14. Finally, the objectors were given several opportunities to challenge the accuracy or correctness of the computation of their individual net settlement benefit under

the proposed plan of allocation, see Pls. Suppl. Mem. in Support of Final Approval and Exhibits 1-41 thereto (Doc. 182-183), including during and immediately after the Fairness Hearing, see Pls. Further Suppl. in Support of Final Approval (Docs. 195-196), but none has come forward with anything specific that could cause the Court to question the soundness of the Enrolled Actuaries' calculations.[4]

15. After considering the strength of Plaintiffs' case compared to the amount of the settlement offer, the complexity and likely length of continued litigation, the amount of opposition to the settlement, the opinion of counsel and the stage of the proceedings, the presence or absence of collusion, the defendant's ability to pay, the reaction of class members, and the public interest, the Court finally approves the Settlement in all respects as fair, reasonable, adequate, and in the best interests of the Class Members pursuant to Fed. R. Civ. P. 23(e). From the outset of this case the Class faced, and to this day the Class faces, numerous affirmative defenses and litigation risks - on liability, on the Plan's claim to deference, on damages, and on the statute of limitations - that could create a complete bar to recovery or leave the Class with a recovery not nearly as valuable as that represented by the proposed settlement which offers Class members significant, and tax-deferred, monetary relief without further delay on a risk-free basis. The Total Settlement Amount is an excellent recovery under these circumstances.

---

[4]The Court has reviewed the declarations filed along with Plaintiffs' Further Supplement in Support of Their Motion For Final Approval of Class Action Settlement and Recommended Plan of Action and, based on the Court's observations at the Fairness Hearing, see Doc. 194, the Court has no reason to doubt the accuracy of Plaintiffs' counsel's or their actuaries' representations or the accuracy of the calculation memorandums for Ms. Matthews, Ms. Croft and Ms. Olive filed by Plaintiffs.

16. The Court further finds that the plan of allocation should be approved because it allocates the net settlement proceeds on an individualized basis through a formula that begins with each Class member's specific losses under each of the First Amended Complaint's seven benefit claims, makes adjustments based on the probability of success of each claim in light of the litigation risks specific to each claim and the statute of limitations risk specific to each Class member, and then, based upon these amounts, distributes the net settlement benefit pro rata.

17. No Class Member may opt-out of the Settlement. The terms of the Agreement, including all Exhibits to the Agreement and to this Judgment, shall be forever binding on the Class Members.

18. Class Counsel have sought an award of attorney's fees, exclusive of costs and expenses, in an amount equal to 30% of the Total Settlement Amount, i.e., $13.5 million, and costs and expenses in the amount of $524,003.65 (including notice costs of $46,250 advanced by Class counsel to implement the Court's preliminary approval order). Under the Court of Appeals' market rate jurisprudence, this Court must decide if the rate requested is within the range of rates the Class and Class Counsel would have negotiated as willing buyer and willing seller in light of the risk of nonpayment and the normal rate of compensation in the market at the time. See, e.g., In re Synthroid Mktg. Litig., 264 F.3d 712, 720-21 (7th Cir. 2001). Among the factors that should or can be used to guide the Court's market rate determination are: the risk of nonpayment, see Synthroid, 264 F.3d at 718, 721; the actual fee contracts negotiated under similar circumstances, see Taubenfeld v. Aon Corp., 415 F. 3d 597, 600 (7th Cir. 2005); fees awarded in similar cases, id.; the quality of counsel's services, id.; the amount of work necessary to resolve

the litigation, see Synthroid, 264 F.3d at 721; and the public service aspects of the case, Great Neck Capital Appreciation Inv. Partnership, L.P. v. PricewaterhouseCoopers, L.L.P., 212 F.R.D. 400, 411 (E.D. Wis. 2002). The 30% requested fee award should be approved because in 2009, before this case was filed, had the Class and Class Counsel, as willing buyer and willing seller, negotiated the fee, they would have agreed on a contingent fee of not less than 30% of any recovery. The evidence establishing this as the market rate includes the fact that: (1) the Class would have sought to retain the best ERISA counsel it could; (2) the market for highly-qualified ERISA counsel with the resources and track record capable of handling a case of this magnitude and complexity is small; (3) the risks of non-recovery were substantial; (4) Class counsel is among the most experienced, able and recognized ERISA pension class action attorneys in the country; (5) no other counsel had stepped forward to represent the Class (indeed, even after the case was file, no other counsel offered to share some of the risk, work or hundreds of thousands of dollars in expert and related expenses that a commitment to a case of this kind necessarily entails); and (6) other highly-qualified ERISA class action attorneys would have declined the representation if the Class would not have agreed to a contingent fee of between 25% and 33-1/3%. The requested award is also fair and reasonable compensation in light of the result obtained for the Class; the risk of non-recovery or a greatly reduced recovery as to those Class Members receiving distributions within six years of the date suit was filed and the very high risk of non-recovery as to Class Members receiving distributions more than six years prior to the date suit was filed; the quality of Class Counsel's representation; the complexity of the litigation and novelty of some of the issues presented; the skill and experience of opposing counsel; the significant time and resources expended in

9

prosecuting this action; and the fact that the percentage-of-the-fund award requested is within the range of awards granted in similar cases in this district and this Circuit.

19. The Court finds that litigation costs of $477,753.65 Plaintiffs report have been adequately documented and were reasonably incurred in connection with the prosecution of the action and that reimbursement of notice costs of $46,250 ("Administrative Costs and "Mailed Notice Costs") advanced by Class counsel to implement the Court's preliminary approval order should also be approved.

20. Named Plaintiffs Alan M. Downes and Terry P. Kumbera have also requested to be paid $7,500 each from the Total Settlement Amount. Based on the representations and submission by Plaintiffs' counsel, the Court finds that the prospect of such awards were reasonably necessary to encourage Plaintiffs to serve, are deserved and are within the range of previous awards of this kind.

21. The Court recognizes that Defendants have denied and continue to deny Plaintiffs' and Class Members' claims. Neither the Agreement, this Final Order, the Judgment, any papers related to the Settlement, nor the fact of Settlement shall be used as a finding or conclusion of the Court, or an admission of the Defendants, or any other person, of any fault, omission, mistake, or liability, nor as evidence of Plaintiffs' lack of conviction in the validity or strength of their claims, and shall not be offered as evidence of any claimed liability in this or any other proceeding. Evidence of the Agreement and this Court's Orders approving same shall be admissible only in proceedings to enforce the Agreement or this Final Order or the Judgment, but not as an admission of liability in the underlying Lawsuit.

**THEREFORE, IT IS ORDERED** that plaintiffs' motion for final approval of the settlement, recommended plan of allocation, attorneys' fees and expenses, and incentive payments for the named plaintiffs is **GRANTED**. The Clerk of Court shall enter the Judgment.

**IT IS FURTHER ORDERED** that defendants' motion to seal (ECF No. 179) is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 20th day of April 2012.

s/ Lynn Adelman
LYNN ADELMAN
District Judge